**In re ANDOVER TOGS, INC., et al., Debtors.**

**Bankruptcy Nos. 96–B–41437 (TLB) to 96–B–41440 (TLB).**

United States Bankruptcy Court, S.D. New York.

Aug. 5, 1996.

Whitman, Breed, Abbott & Morgan by Norman N. Kinel, New York City, for Debtor-in-Possession.

Otterbourg, Steindler, Houston & Rosen, P.C. by Brett H. Miller, New York City, for Official Committee of Unsecured Creditors.

Mary Elizabeth Tom, Acting United States Trustee by Brian S. Masumoto, New York City.

## DECISION ON DEBTORS' APPLICATION FOR APPROVAL OF RETENTION OF DELOITTE & TOUCHE, LLP AS ACCOUNTANTS

TINA L. BROZMAN, Chief Judge.

The debtors, Andover Togs, Inc. *et al.*, ask that I approve the retention of Deloitte & Touche LLP ("Deloitte") to complete auditing services it began prior to the filing of the debtors' petitions. Although the Committee of Unsecured Creditors joins the debtors in the requested relief, the Acting United States Trustee (the "U.S. Trustee") objects. Because I believe that Deloitte's limited retention is warranted here, the debtors' motion is granted.

## I.

The facts are not in dispute. The debtors are required to file annual reports with the Securities and Exchange Commission. Toward that end, they seek authority to retain and employ Deloitte for the limited purpose of completing the audit of the debtors' financial statements for the fiscal year ended November 30, 1995, which financial statements are an integral component of the debtors' 10K. Significantly, the debtors have retained with court approval another accounting firm to assist them in all other areas of their reorganization cases.

Deloitte had commenced and substantially completed such services prepetition and will willingly complete what it began, at a cost of only $15,000. So far, so good, but the rub lies in the fact that Deloitte is a creditor. It is unwilling to waive its prepetition claim, although it has indicated that it would waive its right to vote that claim in the event it were retained.

The debtors undeniably require the services which they ask for Deloitte to provide at what would be the least possible cost. The unpalatable alternative is to retain another firm, but that would entail reconstructing what Deloitte has already done, at an estimated cost to the debtors in excess of $100,000. The debtors also prefer to work with Deloitte because of that firm's acquired familiarity with the debtors' affairs.

The Acting United States Trustee (the "U.S. Trustee") objects to Deloitte's retention because of its status as a creditor of the estate, which is said to remove Deloitte from the category of disinterested persons under section 327(a) of the Bankruptcy Code and thus preclude Deloitte's retention. The debtors assert that section 1107(b) of the Code creates an exception to the requirement of disinterestedness found in section 327(a) and supports the continued retention of Deloitte where equity and the best interest of the estate demand such a result.

## II.

The legal arguments presented by the parties both in their papers and at oral argument focused upon the proper construction of the disinterestedness standards of the Bankruptcy Code. The parties debate the interpretation of the following sections:

11 U.S.C. § 327(a):

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 101(14):

"disinterested person" means a person that. . . .

(A) is not a creditor, an equity security holder or an insider; . . .

11 U.S.C. § 1107(b):

Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

Courts are divided as to how these sections intersect where a debtor's would-be professional is also a creditor. What I will call the strict reading of section 327 represents the majority rule. In the view of this majority of courts, because the Code unambiguously demands that professionals be disinterested, and specifically defines disinterested to exclude creditors of the estate, prepetition creditors may not be employed as professionals by the estate. *United States Trustee v. Price Waterhouse (In re Sharon Steel Corp.)*, 19 F.3d 138, 141 (3d Cir.1994). These same courts reconcile section 1107(b) of the Code with section 327(a) by holding that whereas section 1107(b) relieves professionals of any conflict of interest resulting solely from prior representation of the prepetition debtor, it does not relieve them of any disqualification if they are creditors. *Childress v. Middleton Arms, L.P.*, 934 F.2d 723, 725 (6th Cir.1991); *see also Michel v. Federated Department Stores, Inc. (In re Federated Department Stores, Inc.)*, 44 F.3d 1310, 1319–20 (6th Cir. 1995) (reaffirming *Middleton Arms* and requiring non-disinterested professionals to

disgorge fees awarded by the bankruptcy court). Recognizing the inequitable results that may flow from such an interpretation, the majority nevertheless notes that an inability to fathom the rationale behind the statute's mandate is not reason enough to ignore it. *Michel v. Eagle–Picher Indus., Inc. (In re Eagle–Picher Indus., Inc.)*, 999 F.2d 969, 972 (6th Cir.1993).

A minority of courts in the years preceding the circuit court jurisprudence read section 1107(b) liberally as an exception to the disinterestedness requirement of 327(a) where there was no real conflict of interest and where employment of the professional would benefit the estate. *In re Heatron, Inc.*, 5 B.R. 703, 705 (Bankr.W.D.Mo.1980); *In re Best Western Heritage Inn Partnership*, 79 B.R. 736, 740 (Bankr.E.D.Tenn.1987); *In re Viking Ranches, Inc.*, 89 B.R. 113, 115 (Bankr.C.D.Cal.1988); *In re Microwave Products of America, Inc.*, 94 B.R. 971, 974 (Bankr.W.D.Tenn.1989). These courts treated the professional's status as a creditor as incidental to prior representation of the debtor. The disinterestedness requirements were viewed not as mandatory, but rather as guidelines for the exercise of the court's discretion. *In re Cropper, Co., Inc.*, 35 B.R. 625, 629 (Bankr.M.D.Ga.1983). This approach facilitated equitable considerations such as the detrimental effect on the debtor as a result of the disqualification.

Whereas the parties concentrated on these two approaches, their focus was somewhat misdirected; Deloitte's limited retention is warranted by sections 327(e) and 105(a) of the Code. The first of these sections provides that notwithstanding the Code's disinterestedness requirement, the court may approve the employment, "for a specified special purpose ... [of] an attorney that has represented the debtor, if [such employment is] in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." In enacting subsection (e), Congress recognized that the limited retention of professionals who are not disinterested may sometimes be necessary to "permit the utilization of special knowledge and experience which may be of substantial benefit to the estate[,]" 2 L. King, *Collier on Bankruptcy*, ¶ 327.03 (15th ed. 1996), such as where "the debtor is involved in complex litigation, and changing attorneys in the middle of the case after the bankruptcy case has commenced would be detrimental to the progress of that other litigation." H.R.Rep. No. 595, 95th Cong., 1st Sess. 328 (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 38–39 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5824–5825.

Here, the debtors have never sought to retain Deloitte as their general bankruptcy accountants; rather, their retention is sought only for the narrow and limited purpose of completing the near-finished 1995 audit, and there is nothing to suggest that there is any conflict of interest that would reasonably lead anyone to question its veracity. Moreover, were forensic accounting services necessary, that task would fall, not to Deloitte, but to the debtors' other accountants. Were the creditors concerned that Deloitte were somehow adverse to them, they would be the vocal opponent to this motion. But the committee actually supports the retention. In addition, Deloitte is not being asked to render advice to the debtors but only to complete an audit of what the debtors have already done. Retaining any firm other than Deloitte would increase the additional cost of the audit nearly sevenfold, a shameful waste of already scarce resources. Under these circumstances, allowing Deloitte's special-purpose retention completely accords with the policy that motivates section 327(e).

To be sure, section 327(e), by its terms, speaks only of the special retention of an attorney and does not mention other professionals such as accountants. However, I do not believe that this omission should be interpreted to exclude accountants from the statute's reach. For the reasons stated, the policy objective behind section 327(e) is as applicable in this case as it is with respect to the retention of special counsel. The use of the word "attorney" in the statute is understandable, for special retentions of accountants are extraordinary in bankruptcy. Typically, the work performed by accountants for

debtors-in-possession is central to all aspects of the reorganization process, and will thus not be the subject of the ancillary, narrow charter envisioned by section 327(e). On the other hand, it is very common for a debtor-in-possession to require numerous non-bankruptcy lawyers to deal with specific state law choses-in-action that were commenced pre-petition, or to handle other ongoing legal matters only indirectly related to the debtor's bankruptcy and that require the expertise of an attorney in a specialized field of law other than bankruptcy. Thus, the fact that Congress envisioned only special retentions of lawyers is hardly surprising.

Yet the unusual situation here undeniably calls for the special retention of Deloitte. Indeed, *not* retaining Deloitte would "produce a result demonstrably at odds with the intention of [the] drafters" of section 327(e), and should not be countenanced. *See U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). In the absence of any provision of the Code specifically precluding the limited and narrow retention where necessary of accountants who are not disinterested but who hold no interest adverse to the estate in the matter for which they are to be retained, section 105(a) supplies the court with the power to authorize the retention. It allows a court to issue "any order ... necessary and appropriate to carry out the provisions" of the Code. 11 U.S.C. § 105(a). *See also U.S. Trustee v. Bloom (In re Palm Coast: Matanza Shores Limited Partnership )*, 188 B.R. 741, 743 (S.D.N.Y.1995) (affirming bankruptcy court order permitting case trustee to retain his own firm as real estate brokers, in the absence of an "express statutory limitation" on the trustee's ability to do so). Under these particular circumstances, retention of Deloitte fits within the rubric of section 105(a).

In permitting Deloitte's retention, I recognize that I diverge from the opinion of the bankruptcy court in *In re South Shore Golf Club Holding Co., Inc.,* 182 B.R. 94, 95 (Bankr.W.D.N.Y.1995) which asserted that section 327(e) could not be interpreted to apply to professionals other than attorneys. However, it is notable that in *South Shore,*

the court's interpretation of 327(e) was not essential to its holding.. There, the court found that, in any event, the purpose for which the accountant's retention was sought, as "special counsel to assist in the preparation of the Disclosure Statement and Plan of Reorganization," was "inherent to the general services of an accounting professional in any case under Chapter 11," and did not fall within the purview of section 327(e). *Id.*

Accordingly, the debtors' motion to retain Deloitte is granted on the condition, to which Deloitte has agreed, that Deloitte will waive its right to vote its claim. The debtors are directed to SETTLE an ORDER consistent with this decision.