**In re ESSENTIAL THERAPEUTICS, INC., et al., Debtors.**

**No. 03–11317 MFW.**

United States Bankruptcy Court, D. Delaware.

June 13, 2003.

Guy B. Moss, Esquire, Mary DeNevi, Esquire, Andrew J. Gallo, Esquire, Bingham McCutchen LLP, Boston, MA, Christopher S. Sontchi, Esquire, Ashby & Geddes, P.A., Wilmington, DE, for Debtors.

Julie L. Compton, Esquire, Wilmington, DE, Office of the United States Trustee.

*OPINION*[1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Application of Essential Therapeutics, Inc., and its related entities (collectively "the Debtors") to retain Bingham McCutchen LLP ("Bingham") as counsel for the Debtors. The United States Trustee ("the UST") has objected to the Application, asserting that Bingham is not "disinterested" as required by sections 327(a) and 101(14) of the Bankruptcy Code.

For the reasons set forth below, we deny the Debtors' Application.

## I. *FACTUAL BACKGROUND*

The Debtors are biopharmaceutical companies committed to the discovery, development and commercialization of critical products for life threatening diseases. The Debtors commenced their chapter 11 cases on May 1, 2003, by the filing of voluntary petitions. On May 2, 2003, the Debtors filed their Application to retain Bingham under sections 327 and 331 of the Code. An objection to the Application was filed by the UST on May 16, 2003, and a hearing was held on the Application on May 20, 2003. The Debtors filed a Memorandum of Law in support of the Application on the eve of the hearing. We, therefore, permitted the UST to submit a Reply Memorandum, which was filed on May 30, 2003. A Supplemental Declaration in support of the Application was also submitted by the Debtors on May 23, 2003, in response to certain factual issues raised at the hearing. The issue is now ripe for decision.

## II. *JURISDICTION*

This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(1), (b)(2)(A) and (O).

## III. *DISCUSSION*

Retention by the Debtors of a professional is governed by section 327(a) which provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). According to section 101(14) " 'disinterested person' means person that ... (D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor."

In the Application to retain Bingham, it is disclosed that a partner at Bingham, Julio Vega, held the position of Secretary of several of the Debtors at various times within two years of the filing of the bankruptcy petition.[2] The UST asserts that this disqualifies Bingham from being retained by the Debtors under the clear

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

2. According to the Application, Mr. Vega served as Secretary of The Althexis Company, Inc., from December 31, 1998, until October 24, 2001; as Secretary of Essential Therapeutics, Inc., from November 15, 2001, until December 12, 2002; and as Secretary of Maret Corporation from February 27, 2002, until December 12, 2002. (*See* Application at ¶ 29.)

language of the Code. The Debtors disagree.

### A. *Was Vega an Officer of the Debtors?*

The Debtors assert that Bingham should not be disqualified because, although Vega served as Secretary of the Debtors which is an officer under the Debtors' by-laws, his role was ministerial only and he should not be considered an officer of the Debtors. They note that the Code does not specifically define what is meant by "officer." Further, the Debtors argue that the policy behind the disqualification provisions of the Code is to assure that counsel is able to provide the "requisite independent judgment and impartial attitude" required of a fiduciary. *In re O'Connor*, 52 B.R. 892, 899 (Bankr.W.D.Okla.1985). Consequently, the Debtors argue that the Court must take a flexible approach to the definition of officer and must consider whether Mr. Vega's service as Secretary of the Debtors would impair Bingham's ability to perform that role. In this case, the Debtors assert that Mr. Vega performed only the ministerial acts of attending meetings of the board of directors and keeping the board minutes. He did not perform any executive functions or have any discretionary authority which is typical of executive officers such as CEOs. Nor is there any actual conflict between Mr. Vega's role as Secretary of the Debtors and Bingham's role as counsel to the Debtors.

The UST does not dispute the role played by Mr. Vega but argues that the statute is clear and precludes retention of anyone who served as an officer of the Debtors regardless of what he or she actually did. The UST asserts that the "flexible" approach urged by the Debtors is contrary to the law in this Circuit. "[W]hen statutory language is clear and unambiguous it must ordinarily be followed." *U.S. Trustee v. Price Waterhouse,*

19 F.3d 138, 141 (3d Cir.1994), *citing Rake v. Wade,* 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993).

We agree with the UST. We "presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.* at 254, 112 S.Ct. 1146.

The words of section 101(14) are not ambiguous; they preclude retention if the professional served as an officer of the Debtors within two years of the petition date. Congress did not state that disqualification is mandated only if the officer was an executive or had more than a ministerial role. Therefore, we conclude that we should not inquire into what role the officer may have played but need determine only whether the professional was in fact an officer within the proscribed time. In this case, the Debtors concede this fact; the Debtors' by-laws do provide that the Secretary is an officer of the Debtors.

Nor is it relevant that there is not an actual conflict of interest between Mr. Vega's role as Secretary to the Debtors and Bingham's role as counsel. The statute expresses Congress' intent that service as an officer within two years of the petition is a disqualifying factor alone.

It is, moreover, clear from both the statute and from *Middleton Arms* that a person can be not "disinterested," yet without an adverse interest. Although it may make little sense to the bankruptcy court and the debtors—or, for that matter, to this court—that Goldman, Sachs is not permitted to serve as financial adviser, the statute requires that result. This court is bound to apply the

plain meaning of the statute even when the application apparently results in an apparent anomaly.

*In re Eagle–Picher Indus., Inc.*, 999 F.2d 969, 972 (6th Cir.1993) (citations omitted). Therefore, we conclude that Mr. Vega is precluded from being retained by the Debtors.

### B. *Does Section 1107(b) Provide a Basis for Employment?*

 At the hearing, the Debtors also argued that section 1107(b) permits the retention of Mr. Vega (and Bingham) despite the language of section 327(a) and 101(14). Section 1107(b) provides:

(b) Notwithstanding section 327(a) of this title, a person is not disqualified for employment, under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

11 U.S.C. § 1107(b).

The Debtors argue that the disqualification of Mr. Vega and Bingham under section 101(14) is solely because of Mr. Vega's prior employment by the debtor as Secretary. Therefore, they insist section 1107(b) mandates that we not disqualify them.

The UST disagrees, arguing that section 1107(b) would permit the retention of Bingham notwithstanding the fact that Bingham had been retained by the Debtors pre-petition, but does not permit the retention of Bingham if there is another, independent reason for their disqualification. In this case, the fact that Mr. Vega served as an officer is another disqualifying factor. *See, e.g., In re Federated Department Stores, Inc.*, 44 F.3d 1310, 1318 (6th Cir.1995)("where a professional is disqualified for other reasons expressly listed in the statutory definition of an 'interested [sic] person,' § 1107(b) does not apply");

*Eagle–Picher*, 999 F.2d at 972 ("section 1107(b) is a narrow exception, meant to apply only when the *sole* reason for disqualification is former employment").

We agree with the UST. As noted in Collier, section 1107(b) was enacted to address a specific situation which arose under the Bankruptcy Act. 7 Collier on Bankruptcy at ¶ 1107.04[3][a]. Under chapter X of the Act, a trustee was usually appointed and the Act required that both the trustee and trustee's counsel be disinterested, including that they not have previously represented the debtor. This created a problem in the rare instances when a debtor remained in possession, because it could not retain counsel that had previously represented it. Under chapter 11 of the Code, the debtor typically remains in possession and Congress determined that it was not appropriate that counsel for the debtor in possession be disqualified simply because it had previously represented the debtor.

However, we cannot conclude that, in enacting section 1107(b), Congress intended to eliminate all the other tests for disqualification of counsel for the debtor specifically enumerated in section 101(14). If this were true, then counsel for the debtor would not be disqualified because it served as an investment banker or was an officer, director or even creditor of the debtor. This is not the case. *See, e.g., Price Waterhouse*, 19 F.3d 138 (disqualifying accountants for the debtor who held claims for fees due for pre-petition services); *Eagle–Picher*, 999 F.2d at 972 (disqualifying investment bankers who had served as underwriters of debtor's securities).

We conclude that section 1107(b) must be narrowly construed and is not meant to eliminate all the specific tests for disqualification enumerated in section 101(14) *except* the mere fact of prior employment or retention. In this case, the disqualification

is not simply because Bingham served as counsel to the Debtors pre-petition, it is because Mr. Vega also served as an officer of the Debtors within two years of the petition. Therefore, sections 327(a) and 101(14)(D) preclude their retention by the Debtors, notwithstanding section 1107(b).

### C. Does the Disqualification of One Partner Disqualify the Entire Law Firm?

The Debtors argue that, even if Mr. Vega is disqualified from retention by the Debtors, Bingham is not. They assert that Mr. Vega will not be involved in Bingham's representation of the Debtors in this case and that Bingham will establish an ethical wall preventing any exchange of information about the case between Mr. Vega and those involved in representing the Debtors.[3]

The UST asserts that the disqualification of Mr. Vega mandates the disqualification of the firm and that the establishment of an ethical wall is insufficient to "cure" such a disqualification.

There is a split of authority on this point. The Debtors rely upon several cases for the proposition that disqualification of an individual who had served as an officer does not disqualify the entire firm. See, e.g., In re S.S. Retail Stores Corp., 211 B.R. 699 (9th Cir. BAP 1997)(attorney had served as assistant secretary to debtor), appeal dismissed, 162 F.3d 1230 (9th Cir. 1998); In re Keravision, Inc., 273 B.R. 614 (N.D.Cal.2002) (partner served as secretary to the debtor); In re Capen Whole-

sale, Inc., 184 B.R. 547 (N.D.Ill.1995)(assistant secretary); In re Timber Creek, Inc., 187 B.R. 240 (Bankr.W.D.Tenn.1995) (partner was director of debtor and a director and shareholder of debtor's parent); In re Creative Restaurant Mgmt., Inc., 139 B.R. 902 (Bankr.W.D.Mo.1992)(assistant secretary). The Debtors also rely on an Order entered by Judge Newsome in In re Tokheim Corporation, Case No. 02–13437 (D.Del. March 31, 2003)(two members of firm were directors).[4]

The cases cited by the Debtors refuse to impute one partner's disqualification under section 101(14)(D) on the firm on two bases. First, the Courts found no express language in the Bankruptcy Code which states that the disqualification of one person mandates the disqualification of his or her firm. One court did, however, consider whether, by virtue of the individual's actions, the firm held a materially adverse interest to the debtor which would be an independent basis for disqualification under section 101(14)(E). Capen, 184 B.R. at 551.

Second, while the applicable state or Model Code of Professional Conduct might impute the disqualification of an individual to the law firm, it does so only in circumstances where the individual had an actual conflict of interest. See, e.g., Rules 1.10(a), 1.7, 1.8(c) and 1.9 of the Model Rules of Professional Conduct.

The UST relies on cases to the contrary, which hold that a finding that one partner

---

3. The Application had listed Mr. Vega as one of two partners to handle the representation of the Debtors. At the hearing, we requested clarification of the ethical wall proposal as well as information regarding how much time Mr. Vega has already spent on the file. The Supplemental Declaration filed by Bingham advised that Mr. Vega had spent only 1/2 hour on the file to date in reviewing the SEC 8K

filed by the Debtors announcing the commencement of the bankruptcy cases.

4. Although we normally do not consider as precedential orders entered without accompanying Opinions, the Order in Tokheim does contain a recitation of the basis for Judge Newsome's decision and, therefore, has been considered.

of a law firm is disqualified mandates that the entire firm be disqualified. *See, e.g., In re Philadelphia Athletic Club, Inc.,* 20 B.R. 328, 338 n. 11 (E.D.Pa.1982)(when an attorney is required to withdraw as counsel to trustee, his firm cannot continue to be employed by trustee); *In re Vebeliunas,* 231 B.R. 181, 196 (Bankr.S.D.N.Y. 1999) (any interest held by one attorney is imputed to the rest of the attorneys in a firm), *appeal dismissed,* 246 B.R. 172 (S.D.N.Y.2000); *In re Envirodyne Indus., Inc.,* 150 B.R. 1008, 1017 (Bankr.N.D.Ill. 1993)(if one attorney in firm is disqualified from representing debtor, the entire firm is disqualified); *In re Tinley Plaza Assoc., L.P.,* 142 B.R. 272, 277 (Bankr.N.D.Ill. 1992)(all members of firm disqualified even if "interested" attorney is merely "of counsel"); *Stanley v. Krogstad (In re Petro-Serve, Ltd.),* 97 B.R. 856, 861 (Bankr. S.D.Miss.1989)(each member of affiliated "group" of attorneys had a sufficient relationship with the others to warrant the group's disqualification because one member was not disinterested); *In re SIS Corp.,* 97 B.R. 361 (Bankr.N.D.Ohio 1989)(same); *In re Wells Benrus Corp.,* 48 B.R. 196, 198 (Bankr.D.Conn.1985) (disqualification of attorney who served as officer of debtor causes firm to be disqualified); *In re Davenport Communications L.P.,* 109 B.R. 362, 367 (Bankr.S.D.Iowa 1990)(confidences learned by one attorney in representing debtor were imputed to entire firm which was therefore disqualified from representation of creditors' committee); *In re Michigan Interstate Ry. Co.,* 32 B.R. 327, 330 (Bankr.E.D.Mich. 1983)(firm disqualified from representing trustee when its special partner was both officer and shareholder of debtor).

The Debtors assert that many of the cases cited by the UST are distinguishable because the disqualification of the individual partner was based on an actual conflict of interest, while is more properly imputed to the firm than mere service as an officer. *See, e.g., Philadelphia Athletic Club,* 20 B.R. at 334 (attorney's representation of minority shareholders/creditors in bankruptcy case prior to appointment of trustee precluded firm's retention as counsel to trustee); *Envirodyne,* 150 B.R. at 1016–21 (representation of substantial shareholder/creditor in connection with leveraged buyout of debtor precluded firm's retention as counsel to debtor); *Tinley Plaza,* 142 B.R. at 280 (counsel who was also a principal in firm providing mortgage brokerage services to the debtor had adverse interest barring retention of his law firm); *Davenport Communications,* 109 B.R. at 367 (representation of creditors' committee after firm's prior representation of debtor created a direct conflict of interest).

However, several cases cited by the UST are directly on point. In the *Wells Benrus* case, the Court disqualified a law firm where two of its attorneys had acted as officers of the debtor pre-petition. 48 B.R. at 198. In that case, the law firm also argued that the assistant secretary was not an officer within the meaning of the Code, based on an analogy to SEC cases.[5] This was rejected. *Id.* Similarly, the Court rejected the assertion that the disqualification of one attorney should not be attributed to the firm, relying on the policy of both the Bankruptcy Code and the Model Code of Professional Responsibility of disqualifying the firm if one member is disqualified. *Id.* at 198–99. It noted the debtor's argument that many companies have members of their law firms serve as officers or directors and stated that "it is for Congress to provide an appropriate statutory adjustment. In the exercise of judicial restraint, this court

---

**5.** The Debtors have made a similar argument. *See* Debtor's Memorandum of Law at 3.

should not and will not rewrite the law." *Id.* at 199. *See also, SIS,* 97 B.R. at 362 (firm disqualified because one of its members had been officer and director of debtor within two years of petition; alternatively, firm was disqualified because it had a pre-petition claim against the debtor which it had transferred to a charity).

Similarly, in the *Michigan Interstate Railway* case, the Court disqualified a firm whose special partner was an officer, director, and minor shareholder (holding 90 of 1200 outstanding shares in the debtor). 32 B.R. at 329. In addressing the issue of whether the disqualification of the special partner warranted disqualification of the entire firm, the Court considered the argument of the firm that "the firm as a partnership entity is not an equity security holder, an officer, or director [and] therefore, the firm is disinterested." *Id.* at 330. It rejected that argument holding that "[A] firm, whether a partnership or a professional corporation, is at root an association of lawyers servicing the clients of the firm." *Id.* We agree with this analysis and with the UST's argument that a law firm is an association of individuals; the firm can only act through those individuals; and, therefore, the disqualification of one must be attributed to all.

In *Vebeliunas,* the Court disqualified counsel for the trustee because a member of the firm had exhibited a strong bias against the debtor, calling him a liar before he was even questioned at the section 341 meeting of creditors. 231 B.R. at 187. The Court disqualified the attorney on that basis although there was no showing of an actual conflict of interest. *Id.* at 193–94. In addition, the Court disqualified the entire firm because "[t]he general rule is that when one member of a firm is disqualified, all members of that firm must be similarly disqualified.... The reason for this rule is

that any interest held by one attorney is imputed to the rest of the lawyers in a firm. If this were not the case, the court would be required to evaluate every other attorney in the firm in order to determine whether they were in fact affected by that interest." *Id.* at 196 (citations omitted).

The analysis of the Court in *Vebeliunas* clearly is applicable in the case where one member has an actual conflict of interest, holds or represents an adverse interest or even expresses bias toward the debtor. The question presented in this case is: is it equally true where the disqualification is simply because one of the members of the firm served as an officer of the debtor?

We conclude that the answer is yes for several reasons. First, we agree with the Court in *Vebeliunas* that not having a general rule which disqualifies the firm because of one member's disinterestedness would require that we interrogate all the members (and even associates) of the firm who will be doing work on the file to ascertain whether the actions of the attorney who served as an officer of the debtor would impair their ability to act on behalf of the debtor and the estate in an impartial manner. This would be a herculean task.

Second, Congress in enacting section 101(14)(D) apparently believed that service as an officer or director of a debtor within the two years before the bankruptcy case was filed would affect "the essential character of independence and disinterestedness which is required" of counsel for the estate. *Philadelphia Athletic Club,* 20 B.R. at 333, *citing* 1 Collier Bankruptcy Manual § 101.13 (1981). Given the current climate of distrust of officers and directors of corporations, it is entirely possible that officers of the Debtors may be subject to suit or, at a minimum, to questions regarding their role in the Debtors'

demise.[6] It would be impossible for Bingham to adequately represent the Debtors' interests in that event.

Nor do we believe that we must wait for that eventuality to occur to disqualify the firm. The possibility that its partner's actions as an officer may be questioned raises a conflict at this time for, if no investigation is done or suit commenced, it may be implied that Bingham failed to do so or hindered such action.[7] This is an untenable position for Bingham and we do not know why they seek it. We conclude that having one member's independence and disinterestedness impugned because he was an officer must equally affect the firm's independence and disinterestedness such that the firm must be disqualified under section 327(a) of the Code.

## IV. *CONCLUSION*

For the foregoing reasons, we conclude that the Application to retain Bingham McCutchen LLP as counsel for the Debtors must be denied.

---

6. Essential Therapeutics, Inc., is a public company whose stock was traded on the Nasdaq National Market System until it was delisted on April 14, 2003.

7. In the *Michigan Interstate Railway* case, the Court held that "[i]t defies reason and belief to suggest that the firm can exercise the independence of judgment necessary to the performance of its duties in this case when its special partner brought the firm to this case and its duties may well include taking a position adverse to the interests of its special partner and his fellow equity security holders." 32 B.R. at 330.